SHERIF A. PHILIPS, M.D., Plaintiff v. PITT COUNTY MEMORIAL HOSPITAL INCORPORATED, PAUL BOLIN, M.D., RALPH E. WHATLEY, M.D., SANJAY PATEL, M.D., and CYNTHIA BROWN, M.D., Defendants

No. COA11-1482

(Filed 21 August 2012)

1. Contracts—tortious interference—loss of medical privileges—medical review testimony—protective order

The trial judge did not err in an action involving plaintiff's loss of hospital privileges by granting summary judgment for defendants, Doctors Whatley and Bolin, on a claim for tortious interference based upon their testimony at a medical review committee. Plaintiff did not appeal a protective order barring discovery of testimony before that committee.

2. Statute of Limitation and Repose—tortious interference with contract—hospital privileges—discovery rule

Plaintiff's claim for tortious interference with contractual relationships against defendant Dr. Whatley arising from plaintiff's loss of hospital privileges and Dr. Whatley's communication with a patient's spouse was barred by the statute of limitations. The discovery rule did not save plaintiff's tortious interference claim because it applies only to torts for personal injury or physical damage to property.

3. **Hospitals and Other Medical Facilities—hospital privileges—tortious interference—statute of limitations—protective order**

The trial court correctly granted summary judgment for defendant on tortious interference claims against a hospital arising from plaintiff's loss of privileges at that hospital. Plaintiff's claims were barred by the statute of limitations or blocked by a protective order that prevented discovery of the proceedings and records of a medical review committee.

4. **Fraud—upcoding hospital records—statute of limitations**

Plaintiff's fraud claim against a hospital for "upcoding" medical records, so that patients were charged for treatments and procedures that were not performed, was barred by the statute of limitations.

5. **Administrative Law—exhaustion of remedies—tortious interference with contract—doctrine not applicable**

The doctrine of exhaustion of administrative remedies did not save the tortious interference claim of a doctor who lost his hospital privileges. That doctrine does not apply where a plaintiff seeks damages and the administrative remedies are non-monetary in nature.

6. **Contracts—Loss of hospital privileges—hospital bylaws**

The trial court correctly granted summary judgment for defendant hospital on plaintiff's breach of contract claim arising from the loss of his hospital privileges where he alleged that the hospital failed to comply with its bylaws in reviewing his privileges. The hospital substantially complied with its bylaws and there were no substantial issues of fact as to the alleged breaches plaintiff brought forward on appeal.

7. **Libel and Slander—defamation—loss of hospital privileges—claims against doctors—statute of limitations—medical review committee testimony**

The trial court correctly granted summary judgment for defendants Whatley and Bolin on defamation claims arising from plaintiff's loss of hospital privileges. Any statements by defendants before the medical review committee were privileged and covered by a protective order, the single alleged incident of defamation that occurred outside the proceedings was barred by the one-year statute of limitations, and neither the doctrines of

PHILIPS v. PITT CNTY. MEM'L HOSP., INC.

[222 N.C. App. 511 (2012)]

exhaustion of administrative remedies nor continuing wrong were applicable.

**8. Libel and Slander—defamation—reporting loss of hospital privileges—protective order**

Summary judgment was properly granted for defendant hospital on a defamation claim arising from the reporting of plaintiff's loss of staff privileges to the National Practitioners' Data Bank and North Carolina Medical Board. Plaintiff argued that he demonstrated during the peer review proceedings that the claims against him were false but he was barred by a protective order from presenting any evidence of the proceedings or evidence before the medical review committees.

Appeal by Plaintiff from orders entered 31 March 2010 and 17 May 2011 by Judge Richard L. Doughton in Pitt County Superior Court. Heard in the Court of Appeals 6 June 2012.

*Crouse Law Offices, by James T. Crouse, and Guirguis Law, P.A., by Nardine Mary Guirguis, for Plaintiff.*

*Harris, Creech, Ward and Blackerby, P.A., by Jay C. Salsman, C. David Creech, and Luke A. Dalton, for Defendants.*

STEPHENS, Judge.

*Procedural History and Factual Background*

This matter arises from the suspension and then revocation of the medical staff privileges of Plaintiff Sherif A. Philips, M.D., by Defendant Pitt County Memorial Hospital ("the hospital"). During 2003 and 2004, the Risk Management Department of the hospital received complaints about Plaintiff, a nephrologist with active medical staff privileges at the hospital. The complaints involved, *inter alia,* failing to examine patients and making false entries on medical records, and occurred at about the same time the hospital became aware of a consent order Plaintiff entered into with the North Carolina Medical Board ("NCMB"), in which Plaintiff accepted a reprimand for failing to provide assistance to a patient in cardiopulmonary arrest.[1] As a result of the consent order and the complaints, on 26 August 2004, Defendant Ralph Whatley, M.D., then chief of the

---

1. This incident occurred in May 2000 at a freestanding dialysis unit operated by Total Renal Care in New Bern and unaffiliated with the hospital. At the time, Plaintiff served as medical director for the dialysis unit.

**PHILIPS v. PITT CNTY. MEM'L HOSP., INC.**

[222 N.C. App. 511 (2012)]

internal medicine service (which included nephrology), requested an investigation prior to corrective action pursuant to Article VII, § 2 of the hospital's Medical Staff Bylaws, Rules, and Regulations ("the bylaws").[2]

Charles Barrier, M.D., then chief of staff at the hospital, notified Plaintiff in writing that the request for investigation would be presented to the hospital's medical executive committee ("the executive committee") on 20 September 2004, that he had the right to be present, and of his obligations under the bylaws. The executive committee determined that the allegations in the request for investigation, if confirmed, could warrant action regarding Plaintiff's privileges, and as a result, it directed Whatley to form an ad hoc committee ("the first ad hoc committee") to investigate four issues further: (1) documentation of Plaintiff's physical examinations of four patients, (2) billing related to those four patients, (3) the consent order entered into with the NCMB, and (4) termination of Plaintiff's privileges at another hospital. Whatley appointed the first ad hoc committee, which held multiple investigatory hearings. The first ad hoc committee presented its final written report to the executive committee on 15 November 2004. Plaintiff was again given notice of his right to attend the presentation, make a statement, ask questions, and present evidence. Plaintiff met with the executive committee on 15 November 2004, after which the executive committee issued a report recommending a letter of reprimand and a six-month suspension of Plaintiff's privileges, the latter to be "suspended."

On 17 November 2004, the executive committee notified Plaintiff that it had taken action on the recommendation of the first ad hoc committee, and advised Plaintiff of his appeal rights. When Plaintiff appealed pursuant to the bylaws, a fair hearing committee was appointed, and multiple hearings were held over the next several months. Whatley and Defendant Paul Bolin, M.D., another physician with medical staff privileges at the hospital, provided testimony during the hearings. The hearing committee issued a written report recommending a corrective action (but not a suspension of Plaintiff's

2. In pertinent part, the bylaws provide: "Whenever the Chief of any clinical service . . . believes the activities or professional conduct of any practitioner with clinical privileges is considered to be lower than the standards of the medical staff, disruptive to the operation of the hospital or could affect adversely the health or welfare of a patient, [the Chief] may request an investigation. The request must be made in writing . . . to the PCMH Executive Committee . . . and shall contain documentation of the specific activities or conduct which constitutes the grounds for the request." Art. VII, § 2(a).

privileges) which was presented to the executive committee on 4 April 2005. The executive committee took action on the same date and accepted the fair hearing panel's recommendation.

Plaintiff elected not to appeal the executive committee's decision to the Board of Trustees, which under the bylaws, retained the power to make final decisions in any corrective action proceedings. However, because it declined to accept the recommendation of the executive committee, as directed by the bylaws, the Board of Trustees then referred the matter to the chief of staff, chief of staff—elect, secretary, and chairman of the Credentials Committee ("the committee of four") for a recommendation.[3] The committee of four issued a written report and recommendation to the Board of Trustees on 21 June 2005. On the same date, the Board of Trustees made its final decision. At that time, Plaintiff's medical staff privileges were up for a regular biennial renewal. The Board of Trustees elected to renew Plaintiff's privileges, subject to certain conditions, including a 90-day suspension of his privileges, 31 days of which would be active and the remaining 59 days suspended, and requirements that Plaintiff make precise chart notes, have his practice patterns reviewed, and adhere to a call schedule.[4] Plaintiff accepted the terms of the conditional renewal of his medical staff privileges. As required by state and federal law, the hospital reported Plaintiff's suspension to the NCMB and the National Practitioners' Data Bank ("NPDB").

Subsequently, the hospital learned that Plaintiff had failed to adhere to a call schedule, one of the conditions of the renewal of his privileges. Specifically, a private investigator hired by the hospital discovered that Plaintiff was out of the county several times when he was scheduled to be on call for the hospital, and that on at least three occasions, the physician purportedly providing call coverage for Plaintiff was also outside the county. Based on this failure to comply with the conditions of renewal, another request for investigation was submitted. In addition, as provided in the bylaws,[5] the hospital's chief

---

3. "If this decision [by the Board of Trustees] is contrary to the PCMH Executive Committee's last such recommendation, the [Board of Trustees] shall refer the matter to the Chief of Staff, Chief of Staff—Elect, Secretary, and Chairman of the Credentials Committee of the Medical Staff for further review and recommendation within 30 days. . . ." Art. VIII, § 11(a).

4. To provide continuous patient care, the hospital requires its physicians to remain in Pitt County ("the county") when scheduled on call, or to have another physician agree to "cover" the call as scheduled.

5. "[W]henever action must be taken immediately in the best interest of patient care in the hospital or of the public welfare, the Chief of Staff acting on his own

of staff determined that a summary suspension of Plaintiff's privileges was necessary to protect patient safety.

A second ad hoc committee was appointed to investigate Plaintiff's noncompliance with the conditions of renewal. The second ad hoc committee submitted a written report and recommendation to the executive committee, which took action on the recommendation to invoke the remaining 59 days of Plaintiff's previous suspension. Plaintiff again appealed, leading to the appointment of a second hearing committee, which again held multiple hearings on the matter. The second hearing committee reported to the executive committee which took action on 19 December 2006. Plaintiff appealed to the Board of Trustees, which upheld the recommendation of the executive committee and permanently revoked Plaintiff's medical staff privileges.

Plaintiff has previously filed two lawsuits against Defendants[6] in the United States District Court for the Eastern District of North Carolina, each of which was dismissed pursuant to Rule 12(b)(6) and for lack of subject matter jurisdiction. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176 (4th Cir. 2009) (affirming the dismissals). The state action here was filed on 12 August 2009. The trial court dismissed Plaintiff's claims for fraud and tortious interference with contract pursuant to Rule 12(b)(6) on 31 March 2010, and granted Defendants' motion for summary judgment on Plaintiff's remaining claims for breach of contract, defamation, injunctive relief, and punitive damages on 17 May 2011. Plaintiff appeals.

## Discussion

Plaintiff brings forward two arguments on appeal: that the trial court erred in (1) dismissing his claims for fraud and tortious interference with contract pursuant to Rule 12(b)(6), and (2) granting summary judgment for Defendants on Plaintiff's claims for breach of contract, defamation, punitive damages, and injunctive relief because there existed disputed issues of material fact. As discussed below, we affirm.

---

authority . . . may . . . suspend all or any portion of the clinical privileges of a practitioner . . . ." Art. VII, § 8(a).

6. Plaintiff's first federal lawsuit also included Sanjay Patel, M.D., and Cynthia Brown, M.D., as defendants. Brown and Patel were named defendants in this action as well, but were voluntarily dismissed with prejudice by Plaintiff on 7 May 2011, and thus, are not participants in this appeal.

*Standards of Review*

Pursuant to Rule 12(b)(6),

> [d]ismissal is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim. On appeal of a 12(b)(6) motion to dismiss, this Court conducts a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct.

*Burgin v. Owen*, 181 N.C. App. 511, 512, 640 S.E.2d 427, 428-29 (citations and quotation marks omitted), *appeal dismissed and disc. review denied*, 361 N.C. 425, 647 S.E.2d 98, *cert. denied*, 361 N.C. 690, 652 S.E.2d 257 (2007).

> Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party. If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmovant to present specific facts which establish the presence of a genuine factual dispute for trial.

*In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citations and quotation marks omitted). Further,

> [i]n order to bear its burden, a defendant is required to present a forecast of the evidence which is available at trial and which shows that there is no material issue of fact concerning an essential element of the plaintiff's claim and that such element could not be proved by the plaintiff through the presentation of substantial evidence. An adequately supported motion for summary judgment triggers the opposing party's responsibility to come forward with facts, as distinguished from allegations, sufficient to indicate that he will be able to sustain his claim at trial.

*McKeel v. Armstrong*, 96 N.C. App. 401, 406-07, 386 S.E.2d 60, 63 (1989). Finally, if a trial court's grant of summary judgment can be sustained on any grounds, we must affirm it on appeal. *Shore v.*

*Brown,* 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989). "If the correct result has been reached, the judgment will not be disturbed even though the trial court may not have assigned the correct reason for the judgment entered." *Id.*

### Protective Order

On 5 May 2010, Defendants moved for a protective order pursuant to section 131E-95(b) of the Hospital Licensure Act:

> The proceedings of a medical review committee, the records and materials it produces and the materials it considers shall be confidential and not considered public records within the meaning of G.S. 132-1, " 'Public records' defined", and shall not be subject to discovery or introduction into evidence in any civil action against a hospital, an ambulatory surgical facility licensed under Chapter 131E of the General Statutes, or a provider of professional health services which results from matters which are the subject of evaluation and review by the committee. No person who was in attendance at a meeting of the committee shall be required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of the committee or as to any findings, recommendations, evaluations, opinions, or other actions of the committee or its members. However, information, documents, or records otherwise available are not immune from discovery or use in a civil action merely because they were presented during proceedings of the committee. Documents otherwise available as public records within the meaning of G.S. 132-1 do not lose their status as public records merely because they were presented or considered during proceedings of the committee. A member of the committee or a person who testifies before the committee may testify in a civil action but cannot be asked about the person's testimony before the committee or any opinions formed as a result of the committee hearings.

N.C. Gen. Stat. § 131E-95(b) (2011). On 20 June 2010, the trial court entered a protective order pursuant to section 131E-95(b). In the order, the court provided that the following materials were privileged: "documents reflecting the proceedings of any of these committees;[7] records and materials produced by any of these committees; or

---

7. The ad hoc and executive committees, as well as the committee of four, were covered as medical review boards. However, the Board of Trustees is not covered by section 131E-95 or the protective order, and thus, as noted therein, "[i]nformation, records, documents[,] and materials" produced by the Board of Trustees do *not* fall under the statutory privilege.

materials considered by any of these committees." The order further noted that, while information from original sources other than the various medical review boards was not privileged simply because it had been presented to the committees, the privilege did extend to information or documents "generated specifically at the request of the committee[s.]" Plaintiff has failed to appeal from this order. Thus, the findings of fact, conclusions of law, and decrees contained in the protective order are binding on appeal. As a result, in arguing error in the dismissal of or summary judgment on his claims, Plaintiff cannot rely on allegations or assertions which rest upon any of the privileged information, documents, or testimony covered by the protective order.

## I. Dismissal of Claims Pursuant to Rule 12(b)(6)

Plaintiff argues that the trial court erred in dismissing his claims for tortious interference with existing contractual relationships against all Defendants and for fraud against the hospital pursuant to Rule 12(b)(6). We disagree.

### A. Tortious interference claims against Bolin and Whatley

[1] As noted *supra*, pursuant to section 131E-95(b), the trial court entered a protective order barring discovery of "documents reflecting the proceedings of any of [all relevant medical review] committees; records and materials produced by any of these committees; or materials considered by any of these committees[.]" Further, section 131E-95(b) specifically provides that "a person who testifies before the committee may testify in a civil action but cannot be asked about the person's testimony before the committee." Thus, Plaintiff cannot produce *any* evidence regarding the sole factual allegation that forms the basis for his tortious interference claim against Bolin, to wit, "[a]s a direct consequence of testimony provided by Whatley and Bolin at the Fair Hearing, findings and recommendations were made by the hearing panel, and corrective action that suspended and then terminated [Plaintiff's] medical staff privileges was taken." Because Plaintiff's "complaint discloses [a] fact that necessarily defeats the [] claim[,]" dismissal was proper. *Burgin*, 181 N.C. App. at 512, 640 S.E.2d at 429. Likewise, to the extent Plaintiff's tortious interference claim against Whatley is based upon Whatley's testimony before the medical review committees, dismissal of that claim was proper.

[2] Plaintiff's tortious interference claim against Whatley is also based upon the allegation that "Whatley contacted one of [Plaintiff's] patients (Patient C) and told the patient that he should look for another physician because [Plaintiff] was not available to his patients."

In their motion to dismiss, Defendants asserted the three-year statute of limitations on tort actions in this State as a defense. *See* N.C. Gen. Stat. § 1-52(1) (2011). "Once a defendant raises a statute of limitations defense, the burden of showing that the action was instituted within the prescribed period is on the plaintiff." *Horton v. Carolina Medicorp, Inc.*, 344 N.C. 133, 136, 472 S.E.2d 778, 780 (1996) (citation omitted).

The record on appeal reveals an affidavit by Vivian Weston, the wife of one of Plaintiff's dialysis patients, stating that Whatley called her "[i]n or around April 2005" and suggested she find her husband another doctor because Plaintiff had "a problem" at the hospital.[8] Plaintiff's complaint was not filed until 12 August 2009, more than three years after Whatley's allegedly tortious conduct, and thus this claim is barred by section 1-52(1).[9] Accordingly, the trial court did not err in dismissing Plaintiff's tortious interference claims against Whatley.

*B. Tortious interference claims against the hospital*

**[3]** Plaintiff's tortious interference claims against the hospital are based upon allegations that the hospital (1) "initiated an investigation of [Plaintiff], which resulted in subsequent corrective action that suspended and then terminated" Plaintiff's medical staff privileges, and that the hospital (2) "was not justified in taking [the] corrective action[.]" In addition, Plaintiff alleges that the hospital's conduct "was intended to induce patients not to continue seeking medical care . . . from [Plaintiff] and . . . to deprive [Plaintiff] of his ability to provide medical care . . . to his patients."

"When the right of a party is once violated, even in ever so small a degree, the injury . . . at once springs into existence and the cause of action is complete." *Stewart v. Se. Reg'l Med. Ctr.*, 142 N.C. App. 456, 461, 543 S.E.2d 517, 520 (2001) (citation and quotation marks omitted). As noted, *supra*, Plaintiff did not assert these claims until August 2009. Accordingly, to the extent that Plaintiff's claim against

---

8. Although Weston's husband is not explicitly identified as "Patient C," the record before us contains no evidence suggesting that Whatley contacted any of Plaintiff's other patients or their family members.

9. Plaintiff notes that he did not discover this alleged tort until at least 8 May 2006, and asserts that his claim is saved by the discovery rule. We note that the so-called "discovery rule" is inapplicable here, as it tolls the running of the statute of limitations only for torts alleging "personal injury or physical damage to claimant's property[.]" N.C. Gen. Stat. § 1-52(16); *see also Birtha v. Stonemor, N.C., LLC*, ____ N.C. App. ____, ____, 727 S.E.2d 1, 11-12 (2012) (holding the discovery rule inapplicable where the "[p]laintiffs do not allege bodily harm or physical damage to [their] property").

the hospital is based on the initiation of the investigation in September 2004, it is barred by the statute of limitations. N.C. Gen. Stat. § 1-52.

As to any claim based on the allegation that the corrective actions taken by the hospital (through its Board of Trustees) was not justified, Plaintiff cannot forecast any evidence to support that claim. The elements of tortious interference with contract are:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to [the] plaintiff.

*United Lab., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988) (citation omitted). The Board of Trustees' decisions regarding corrective action were based upon the findings and recommendations of the medical review committees, the proceedings and records of which are privileged by the protective order as discussed *supra*. Without the ability to discover those materials or present them at trial, Plaintiff cannot show that any recommendations produced by the medical review committees were unjustified, and without being able to show fault in those recommendations, Plaintiff cannot show that the Board of Trustees acted without justification in relying upon those recommendations in suspending and then terminating his medical staff privileges. Accordingly, this argument is overruled, and the trial court's dismissal of Plaintiff's tortious interference with contract claims is affirmed.

## C. *Fraud claim against the hospital*

[4] Plaintiff also contends that the trial court erred in dismissing his claim for fraud against the hospital. In his complaint, Plaintiff asserted that the hospital "upcoded" the records of two of Plaintiff's patients, such that they were charged for treatments and procedures which were not actually performed. According to Plaintiff's complaint, these upcodings later served as a material part of the allegations against him for making false entries in patient medical records during the medical review process. However, in his deposition, Plaintiff stated that these instances of upcoding occurred in 2004 and earlier, more than three years prior to the filing of his complaint in August 2009. In addition, Plaintiff's complaint states that he met with Whatley and others in July 2004 to discuss the upcoding issue, indi-

cating that Plaintiff was aware of the hospital's allegedly fraudulent actions at that time. As such, Plaintiff's fraud claim is barred by the three-year statute of limitations. N.C. Gen. Stat. § 1-52(9).

### D. Exhaustion of Remedies Doctrine

**[5]** Plaintiff contends that any claims dismissed as violating the statute of limitations are saved by the exhaustion of administrative remedies doctrine. Plaintiff asserts that the statute of limitations was tolled under the doctrine until the final decision to terminate Plaintiff's medical staff privileges was made by the Board of Trustees on or about 29 December 2006. We are not persuaded.

Under the doctrine, "[w]hen an effective administrative remedy exists, that remedy is exclusive. However, when the relief sought differs from the statutory remedy provided, the administrative remedy will not bar a claimant from pursuing an adequate remedy in civil court." *Johnson v. First Union Corp.*, 128 N.C. App. 450, 456, 496 S.E.2d 1, 5 (1998) (citation and quotation marks omitted). Specifically, the doctrine does not apply where a plaintiff seeks damages and the administrative remedies are non-monetary in nature. *White v. Trew*, ____ N.C. App. ____, ____, 720 S.E.2d 713, 719 (2011).

Here, Plaintiff sought monetary damages for his claims of tortious interference with contract and fraud. However, the hospital's bylaws, which govern the administrative review and appeals process at issue, do not provide for monetary damages. Accordingly, the doctrine of the exhaustion of administrative remedies is inapplicable.

### II. Summary Judgment

Plaintiff also argues that the trial court erred in granting summary judgment to Defendants on Plaintiff's claims for breach of contract against the hospital; defamation against Whatley, Bolin, and the hospital; injunctive relief against the hospital; and punitive damages against Whatley, Bolin, and the hospital.[10] We disagree.

---

10. We note that, on appeal, Plaintiff makes several different contentions in support of his argument that summary judgment was not proper, including, *inter alia*, that the hospital was not entitled to immunity under the Health Care Quality Improvement Act ("HCQIA"), 42 U.S.C. § 11111(a) (2011). Although we touch briefly on a reporting requirement contained in a different section of HCQIA in our discussion of Plaintiff's defamation claim, we uphold the trial court's grant of summary judgment on the basis of our State's statutory and case law and accordingly do not reach any question of immunity under HCQIA.

## A. Breach of Contract Claim

[6] Plaintiff contends the hospital breached its contract with him by failing to comply with the bylaws in conducting the medical review of his medical staff privileges. After careful review, we reject Plaintiff's arguments.

As this Court has noted,

> [b]y statute, regulation, and case law, the authority to make corrective action decisions rests with the governing body of a hospital. It is not the role of this Court to substitute our judgment for that of the hospital governing body, which has the responsibility of providing a competent staff of physicians under N.C. Gen. Stat. § 131E-85. As long as the governing body's suspension of privileges is administered with fairness, geared by a rationale compatible with hospital responsibility and unencumbered with irrelevant considerations, this Court should not interfere.

*Lohrmann v. Iredell Mem'l Hosp., Inc.*, 174 N.C. App. 63, 77, 620 S.E.2d 258, 266 (2005) (citations and quotation marks omitted), *disc. review denied*, 360 N.C. 364, 629 S.E.2d 853 (2006). Accordingly, summary judgment is proper where a hospital substantially complies with its bylaws in conducting a medical review process which leads to corrective action against a physician. *Id.* at 73, 620 S.E.2d at 263. Our review indicates that the hospital substantially complied with its bylaws in conducting the investigation of and applying a corrective action to Plaintiff. Further, as to the alleged breaches Plaintiff brings forward on appeal, the record evidence reveals no genuine issues of material fact.

Plaintiff asserts breach in that, as part of its investigations, the hospital allowed nurses to shadow him and report back to the medical review committees, hired a private investigator to report on Plaintiff's whereabouts during scheduled on-call periods, and did not interview certain patients or their spouses. Our review of the bylaws reveals no provisions relating to any of these assertions. Plaintiff also asserts that the hospital unilaterally cut short his term of appointment, so as to cause him to come up for renewal of privileges in 2005 rather than 2006. However, the evidence in the record is undisputed that the hospital reappointed all physicians in 2001, and then subjected all physicians (including Plaintiff) to the reappointment process every two years thereafter, including in 2003. Accordingly,

Plaintiff, along with every other physician on the hospital's medical staff, was due for biennial renewal of privileges in 2005.

Plaintiff contends that the hospital prevented him from appealing when it notified him that a decision on his reappointment could be delayed if he appealed the executive committee's decision. However, a letter dated 16 May 2005 from Plaintiff's then-counsel to the hospital's counsel *thanks* the hospital for "its insights concerning" possible scheduling conflicts between the committee meetings for the appeal and the reappointment process, and notifies the hospital that Plaintiff has elected not to appeal. Nothing in the record suggests that the hospital attempted to prevent Plaintiff from pursuing an appeal, and nothing in the bylaws requires any different appeal process in the event that proceedings related to a corrective action coincidentally fall at the same time a physician is up for renewal of privileges.

Plaintiff also asserts breach in the Board of Trustees' decision to impose a harsher sanction than that recommended by the first fair hearing panel and accepted by the first medical review committee. However, nothing in the bylaws requires the Board of Trustees to accept such recommendations, and the bylaws explicitly give the Board of Trustees the final decision-making power in corrective actions.

Plaintiff next asserts breach by the hospital in its imposition of a 90-day suspension of his medical staff privileges with a 31-day active suspension and its later invocation of the remaining 59 days of suspension. Plaintiff also explicitly asserts that the 22 June 2005 reappointment letter containing conditions for renewal of his privileges formed a binding contract with the hospital. However, among the conditions Plaintiff explicitly agreed to were imposition of a 90-day suspension of his medical staff privileges with a 31-day active suspension and the right to invoke the remaining 59 days of suspension if Plaintiff failed to comply with the conditions of renewal. Accordingly, imposition of these two *terms* of the contract is not a breach. In addition, Plaintiff is estopped from challenging terms of the contract. *See B & F Slosman v. Sonopress, Inc.*, 148 N.C. App. 81, 88, 557 S.E.2d 176, 181 (2001) (holding that the theory of quasi-estoppel prevents a party from accepting benefits from a contract while simultaneously denying the effect of other terms of the same agreement).

Finally, section 131E-95 provides that "[a] member of a duly appointed medical review committee *who acts without malice or fraud* shall not be subject to liability for damages in any civil action on account of any act, statement or proceeding undertaken, made, or

**PHILIPS v. PITT CNTY. MEM'L HOSP., INC.**

[222 N.C. App. 511 (2012)]

performed within the scope of the functions of the committee." N.C. Gen. Stat. § 131E-95(a) (emphasis added). In determining whether a plaintiff has adequately alleged malice or fraud under the statute, this Court has noted:

> Malice is defined as: The intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent. A condition of mind which prompts a person to do a wrongful act willfully, that is, on purpose, to the injury of another, or to do intentionally a wrongful act toward another without justification or excuse.

> The North Carolina Supreme Court states "malice in law" is presumed from tortious acts, deliberately done without just cause, excuse, or justification, which are reasonably calculated to injure another or others.

> The essential elements of fraud [are]

> (1) That defendant made a representation relating to some material past or existing fact; (2) that the representation was false; (3) that when he made it, defendant knew that the representation was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that plaintiff reasonably relied upon the representation, and acted upon it; and (5) that plaintiff thereby suffered injury.

*McKeel*, 96 N.C. App. at 406, 386 S.E.2d at 63. In *McKeel*, the plaintiff alleged malice and fraud by a hospital and others, alleging that a medical review process had been unfair and that his economic competitors had been allowed to serve on the medical review committee. *Id.* at 407-08, 386 S.E.2d at 63-64. In affirming summary judgment for all defendants, we noted that

> [a]ll the allegations raised by [the] plaintiff point to areas of the internal investigation process where possible conflicts of interest could arise. As in almost any situation of this nature, opportunities existed here to compromise the investigation if the persons involved had been motivated by malicious intent. In this case, however, [the] plaintiff has failed to produce any evidence of such intent.

*Id.* at 408, 386 S.E.2d at 64.

Similarly, Plaintiff's contentions of malice and fraud are largely based on allegations that Whatley, Bolin, and other medical staff who

served on or testified to the various committees were economic competitors and/or biased against him. However, Plaintiff presents no evidence that any person was motivated by malicious intent. Further, many of the purported actions or omissions of Whatley, Bolin, and others concern their participation with the committees involved in the investigations of and corrective actions against Plaintiff. As such, under the terms of the protective order, Plaintiff cannot discover or present evidence as to any of these allegations. Thus, Plaintiff cannot meet his "responsibility to come forward with facts, as distinguished from allegations, sufficient to indicate that he will be able to sustain his claim[s] at trial." *Id.* at 407, 386 S.E.2d at 63.

*B. Defamation Claims Against Whatley and Bolin*

**[7]** Plaintiff also alleged defamation by Bolin and Whatley in their testimony before the committees and by Whatley in a statement made to one of Plaintiff's patients. "To be actionable, a defamatory statement must be false and must be communicated to a person or persons other than the person defamed." *Andrews v. Elliot,* 109 N.C. App. 271, 274, 426 S.E.2d 430, 432 (1993). In addition, "[t]o escape the bar of the statute of limitations, an action for libel or slander must be commenced within one year from the time the action accrues, . . . and the action accrues at the date of the publication of the defamatory words, regardless of the [date of discovery by the plaintiff]." *Gibson v. Mut. Life Ins. Co. of N.Y.,* 121 N.C. App. 284, 287, 465 S.E.2d 56, 58 (1996) (citations and quotation marks omitted).

As noted *supra,* any testimony by Bolin and Whatley before the medical review committees is privileged and covered by the trial court's protective order. *See* N.C. Gen. Stat. § 131E-95(b) ("[A] person who testifies before the committee may testify in a civil action but cannot be asked about the person's testimony before the committee."). Without the ability to introduce the allegedly defamatory statements at trial, Plaintiff patently cannot "sustain his claim[s] at trial." *McKeel,* 96 N.C. App. at 407, 386 S.E.2d at 63.

Plaintiff also alleged a single incident of defamation outside the proceedings of the medical review committees, to wit, the allegedly defamatory statement by Whatley to Patient C in April 2005. Plaintiff contends that he did not discover this alleged tort until at least 8 May 2006 and notes this defamation claim was first asserted in his second federal lawsuit in March 2007. Plaintiff cites no authority for his assertion that "[d]efamation claims against individuals are not barred by the one[-]year statute of limitations for defamation [N.C. Gen. Stat.

§ 1-54(3),]" and we know of none. Rather, as noted *supra*, such "an action . . . accrues at the date of the publication of the defamatory words, regardless of the [date of discovery by the plaintiff]." *Gibson*, 121 N.C. App. at 287, 465 S.E.2d at 58. Accordingly, because Plaintiff did not assert this claim until more than two years following Whatley's allegedly defamatory statement, this claim is barred by the one-year statute of limitations. *Id.*

Plaintiff's assertion that his claim is saved by the doctrine of the exhaustion of administrative remedies is likewise unavailing, as the appeals process provided for in the bylaws concerned Plaintiff's medical staff privileges, and the alleged statement was not part of that process. Further, Plaintiff's invocation of the doctrine also fails in that Plaintiff sought monetary damages from Whatley for the purported defamation, a remedy not available under the bylaws. *See Johnson*, 128 N.C. App. at 456, 496 S.E.2d at 5 ("[W]hen the relief sought differs from the statutory remedy provided, the administrative remedy will not bar a claimant from pursuing an adequate remedy in civil court."). In addition, we reject Plaintiff's assertion that this claim is saved by the "continuing wrong doctrine," as that doctrine applies only where the unlawful acts continue, not where, as here, there are purported continual bad effects arising from a single, discrete act alleged to have been unlawful. *See, e.g., Williams v. Blue Cross Blue Shield of N.C.*, 357 N.C. 170, 179, 581 S.E.2d 415, 423 (2003). Accordingly, the court did not err in granting summary judgment to Bolin and Whatley on Plaintiff's defamation claims.

*C.  Defamation Claim Against the Hospital*

[8]  Plaintiff's defamation claim against the hospital is based on his allegation that the hospital's reports regarding suspension of his medical staff privileges to the NPDB and the NCMB were false. Because Plaintiff cannot forecast evidence to prevail on this claim, the trial court's grant of summary judgment was proper.

Under HCQIA, the hospital was required to report to the NPDB any professional review action adversely affecting the medical staff privileges of a physician for more than 30 days. 42 U.S.C. § 11133(a)(1)(A) (2011). The information reported includes the name of the physician, the action taken, and the reasons for the action. *Id.* § 11133(a)(3). A hospital complying with this requirement cannot be "held liable in any civil action with respect to any report made under [42 U.S.C. §§ 11131 *et seq.*] . . . without knowledge of the falsity of the information contained in the report." *Id.* § 11137(c) (2011). In addition,

under N.C. Gen. Stat. § 90-14.13(a)(2) (2011), hospitals must report any suspension or revocation of medical staff privileges to the NCMB.

Here, Plaintiff does not argue that the reports were false in stating that he was suspended for more than 30 days or that the reports incorrectly stated the basis for his suspension as determined during the corrective action process. Rather, he alleges that he demonstrated "during the peer review proceedings" that various allegations against him which led to the eventual corrective actions were false. As discussed *supra*, Plaintiff is barred from presenting any evidence of the proceedings or evidence before the medical review committees, and as such, he cannot establish the falsity of the decision of the committees. *See Andrews*, 109 N.C. App. at 274, 426 S.E.2d at 432. Accordingly, the trial court did not err in granting summary judgment to the hospital on this claim.

### D.  Injunctive Relief and Punitive Damages Claims

In light of our affirmance of the court's grant of summary judgment to Defendants on Plaintiff's claims for breach of contract and defamation, we likewise affirm summary judgment on Plaintiff's request for injunctive relief and punitive damages.

AFFIRMED.

Judges BRYANT and THIGPEN concur.