IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-679

Filed: 19 February 2019

Robeson County, No. 17 CVS 1375

NANNY'S KORNER DAY CARE CENTER, INC., Plaintiff,

v.

NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF CHILD DEVELOPMENT AND EARLY EDUCATION, Defendant.

Appeal by Plaintiff Nanny's Korner Day Care Center, Inc. from order entered 12 March 2018 by Judge C. Winston Gilchrist in Robeson County Superior Court. Heard in the Court of Appeals 14 January 2019.

*Ralph T. Bryant, Jr., for Plaintiff-Appellant Nanny's Korner Day Care Center, Inc.*

*North Carolina Attorney General Josh Stein, by Assistant Attorney General Alexandra Gruber, for Defendant-Appellee.*

HUNTER, JR., Robert N., Judge

Plaintiff Nanny's Korner Day Care Center, Inc. ("Plaintiff") appeals from an order dismissing its complaint against the North Carolina Department of Health and Human Services, Division of Child Development and Early Education ("Defendant") for failure to state a claim upon which relief may be granted based on the statute of limitations. We affirm.

## I.     Factual & Procedural History

On 5 November 2009, Defendant received a report that an eight-year-old girl enrolled at Plaintiff's daycare center complained a staff member at the facility had touched her inappropriately. The complaint prompted an investigation by Sharon Miller ("Ms. Miller"), an abuse and neglect consultant for Defendant, and a social worker from the Robeson County Department of Social Services ("DSS"). The investigation consisted of visits to the child's school and home to interview the child, as well as the child's guidance counselor, teacher, mother, and sibling. Ms. Miller and the social worker then visited Plaintiff's facility to interview staff members. While there, Ms. Miller and the social worker also interviewed Plaintiff's CEO, Bernice Cromartie ("Mrs. Cromartie"), as well as the accused, her husband Ricky Cromartie ("Mr. Cromartie"). Mr. Cromartie, now deceased, was a teacher and maintenance worker at Plaintiff's facility. Mr. Cromartie denied inappropriately touching the child, and requested a polygraph test, which he passed with no deception. No criminal charges were filed against Mr. Cromartie.

On 2 February 2010, Ms. Miller received notice that DSS completed its investigation and "substantiated" the allegations of sexual abuse against Mr. Cromartie.[1] On 4 February 2010, Ms. Miller submitted a Case Decision Summary of

---

[1] N.C. Gen. Stat. § 7B-302 details the required assessment that must be completed by the Director of the Department of Social Services when a report of abuse, neglect, or dependency is received. *See* N.C. Gen. Stat. § 7B-101 for definitions. We note "substantiated" as used in the statute

Defendant's investigation to her supervisor, noting DSS had substantiated the allegations of inappropriate touching of a child at Plaintiff's facility by Mr. Cromartie.

In June 2010, Defendant's Internal Review Panel ("the Panel") determined the appropriate administrative action was a written warning. The Panel also reviewed its decision to prohibit Mr. Cromartie from Plaintiff's facility during operating hours, and upheld the decision, citing DSS's substantiation of child sexual abuse. The Panel agreed the decision would remain in effect unless substantiation was overturned. Defendant never conducted an independent investigation into the allegations, but rather relied on DSS's substantiation of child sexual abuse in its decision to issue a written warning to Plaintiff. Defendant did not give Plaintiff or Mr. Cromartie a hearing to contest the finding of substantiation of abuse.

After a timely petition by Plaintiff for a contested case hearing in the Office of Administrative Hearings ("OAH"), a hearing on the petition was held on 12 July 2011. Despite expressing doubts about whether Mr. Cromartie sexually abused the child at Plaintiff's facility, the Administrative Law Judge affirmed the Division's decision to issue a written warning to Plaintiff and restrict Mr. Cromartie from the property when children were present. In its conclusion of law, the Administrative Law Judge concluded:

> 11. The only issue before the undersigned is whether respondent acted properly in issuing the written warning

does not involve an impartial review by a neutral magistrate where an accused has the right to traditional due process protections. *See* discussion *supra*.

> to Petitioner's family child care center, and in implementing the Correct Action plan prohibiting Ricky Cromartie from being on the child care facility premises while children are in care.
>
> 12. While the preponderance of the evidence before me raises serious questions and/or doubts about whether Mr. Cromartie sexually abused the minor child at Petitioner's center on November 5, 2009, the undersigned lacks the authority and/or jurisdiction to issue a formal determination on the merits of that substantiation. Review of DSS' substantiation is located in another forum other than the Office of Administrative Hearings.

On or about 12 March 2012, Defendant adopted the Administrative Law Judge's order as its Final Agency Decision. Plaintiff then filed a petition in Wake County Superior Court seeking judicial review of Defendant's Final Agency Decision pursuant to N.C. Gen. Stat. § 150B-36[2] of the North Carolina Administrative Procedure Act ("NCAPA"). The Wake County Superior Court upheld the Administrative Law Judge's decision in an order entered on 9 January 2013.

Plaintiff filed a timely notice of appeal to the North Carolina Court of Appeals ("*Nanny's Korner I*"). On 20 May 2014, the Court of Appeals held Defendant erred when it relied upon DSS's substantiation of abuse to issue the written warning to

---

[2] In 2011, the General Assembly revised the contested case procedure set forth in the NCAPA by amending and repealing various statutory provisions in Chapter 150B of the North Carolina General Statutes. *See* 2011 N.C. Sess. Law 1678, 1685-97, ch. 398, §§ 15-55. The amendments went into effect on 1 January 2012. Plaintiff's contested case commenced on 21 July 2010. We therefore conduct our review pursuant to the statutory procedures in effect at the time Plaintiff's contested case was filed with the OAH.

Plaintiff and order Mr. Cromartie to remain off the premises.[3]  The Court stated that Defendant was required to conduct an independent investigation into the allegations of abuse, and upon substantiation, allow Plaintiff an opportunity to contest the agency's determination.  The Court further stated: "Thus, given the documented evidence in the record showing the impact of [Defendant's] administrative action on [Plaintiff's] livelihood, [Plaintiff] has arguably suffered a deprivation of her liberty interests guaranteed by our State's constitution, necessitating a procedural due process analysis." *Nanny's Korner Care Ctr. v. N.C. HHS*, 234 N.C. App. 51, 64, 758 S.E.2d 423, 431 (2014).

Even though the Court found for Plaintiff in *Nanny's Korner I* and reversed the final agency decision, the damage to Plaintiff had already occurred.  The administrative penalty required Plaintiff to notify its customers on or around 15 June 2010 that a report of child abuse at the daycare center had been substantiated. Consequently, Plaintiff began to lose customers and was eventually forced to close its doors.  "The injury was real, immediate, and inescapable."

On 23 January 2017, Plaintiff filed a Tort Claims Act Affidavit with the North Carolina Industrial Commission alleging negligence by Defendant for failing to conduct an independent investigation into the allegations of child sexual abuse.  In

---

[3] In 2016, the General Assembly revised the required process Defendant must take when it receives a report of child maltreatment.  *See* 2015 Sess. Law 123.  Under the revised law, the Defendant is required to conduct its own investigations of child maltreatment.  *See* N.C. Gen. Stat. § 110-1-5.3. The amendments went into effect on 1 January 2016.

the Affidavit, Plaintiff claimed $600,000 in damages under the North Carolina Tort Claims Act ("Tort Claims Act"). On 20 March 2017, Defendant filed a Motion to Dismiss in accordance with Rule 12(b)(6), and on 4 May 2017, Deputy Commissioner Robert J. Harris granted Defendant's motion and dismissed the claim with prejudice. Plaintiff then appealed to the Full Commission, which heard the matter on 18 October 2017. On 21 December 2018, after Plaintiff filed notice of appeal for the instant action, the Industrial Commission dismissed Plaintiff's tort claim, stating that the claim fell outside the Tort Claims Act's three-year statute of limitations.

On 22 May 2017, Plaintiff filed the instant action in Robeson County Superior Court, alleging a violation of its due process rights under Article 1, section 19 of the North Carolina Constitution. Plaintiff's complaint alleged in pertinent part:

> 22. The defendant enforced the administrative action without conducting an independent determination of whether child abuse had occurred at plaintiff's facility.
>
> 23. Plaintiff was never allowed the opportunity to have a hearing to contest the finding of substantiation of abuse occurring at plaintiff's facility.
>
> 25. The defendant merely adopted the local DSS finding of a substantiation of abuse.
>
> 26. The defendant violated plaintiff's constitutional right to due process when it issued administrative action, without conducting an independent investigation to substantiate abuse. In so doing the plaintiff was deprived on [its] due process right in that plaintiff had a protected interest in the day care licensing and a right to be free from administrative action without due process of law.

- 6 -

32. The Administrative Procedure Act does not provide a remedy for the plaintiff to recover for the harm caused by the deprivation of plaintiff's due process rights, namely, harm to reputation, loss of goodwill, lost income and profits.

33. Because of the defendant's violation of plaintiff's due process rights, plaintiff's business was completely decimated and plaintiff lost all income from the day care operation.

34. There is no adequate remedy at state law for plaintiff to redress the violation of [its] constitutional rights and the resultant harm of lost reputation, business goodwill and lost profits from the business.

43. Article I, Section 19 of the North Carolina Constitution warrants that "[no] person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. N.C. Const. art. I § 19.

51. Plaintiff was deprived of the liberty interest guaranteed under the North Carolina Constitution.

On 17 October 2017, Defendant filed an Answer and Motion to Dismiss for failure to state a claim upon which relief may be granted. Defendant notified Plaintiff of a hearing on the Motion to Dismiss to take place on 12 February 2018, and on 5 February 2018, Defendant submitted a brief in support of the Motion to Dismiss. On 12 February 2018, Plaintiff filed its brief in opposition to the Motion to Dismiss. On 12 March 2018, the Honorable Judge C. Winston Gilchrist of Robeson County Superior Court granted Defendant's motion and dismissed Plaintiff's complaint

pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.  On 9 April 2018, Plaintiff filed a timely notice of appeal to the North Carolina Court of Appeals from the judgment and order of the superior court.

## II.  Jurisdiction & Standard of Review

Plaintiff's appeal from the superior court order lies as of right to this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2017).  "We review a motion to dismiss for failure to state a claim *de novo.*" *Doe v. Charlotte-Mecklenburg Bd. of Educ.*, 222 N.C. App. 359, 365, 731 S.E.2d 245, 249 (2012) (citing *Bobbitt ex. rel. Bobbitt v. Eizenga*, 215 N.C. App. 378, 379, 715 S.E.2d 613, 615 (2011)).

When considering a motion to dismiss under Rule 12(b)(6) of the Rules of Civil Procedure, we consider "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Hinson v. City of Greensboro*, 232 N.C. App. 204, 208, 753 S.E.2d 822, 826 (2014).  "[O]nce a defendant raises the affirmative defense of the statute of limitations, the burden shifts to the plaintiff[] to show their action was filed within the prescribed period." *Asheville Lakeview Properties, LLC v. Lake View Park Commission, Inc.*, 803 S.E.2d 632, 636 (2017).  "Dismissal is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that

necessarily defeats the plaintiff's claim." *Podrebarac v. Horack, Talley, Pharr, & Lowndes, P.A.*, 231 N.C. App. 70, 74, 752 S.E.2d 661, 663 (2013). "A statute of limitations can be the basis for dismissal on a Rule 12(b)(6) motion if the face of the complaint discloses that plaintiff's claim is so barred." *Reunion Land Co. v. Village of Marvin*, 129 N.C. App 249, 250, 497 S.E.2d 446, 447 (1998) (citations omitted). It is well settled that "[q]estions of statutory interpretations are ultimately questions of law for the courts." *Ray v. North Carolina Dept. of Transp.*, 366 N.C. 1, 9, 727 S.E.2d 675, 681-82 (2012). Accordingly, we review *de novo* the superior court's order granting dismissal.

## III. Analysis

Plaintiff argues its constitutional procedural due process claim was improperly dismissed under Rule 12(b)(6) of the Rules of Civil Procedure because the statute of limitations was tolled while Plaintiff exhausted its administrative remedies. Unfortunately, we must disagree.

On appeal, Plaintiff raises two primary issues for the Court: (1) whether the superior court erred when it granted Defendant's Motion to Dismiss Plaintiff's procedural due process claim; and (2) whether the superior court erred when it failed to apply the Doctrine of Judicial Estoppel to prevent Defendant from taking an inconsistent position before the Industrial Commission. Because Plaintiff at oral

argument on 14 January 2019 waived the Judicial Estoppel issue, we need not address it here.

In support of its position that the superior court erred in granting Defendant's Motion to Dismiss its procedural due process claim, Plaintiff argues (1) Plaintiff alleged sufficient facts to support a constitutional claim; (2) The Law of the Land Clause provides a remedy; (3) Plaintiff's claim is not barred by sovereign immunity; (4) The statute of limitations was tolled while Plaintiff pursued administrative remedies through *Nanny's Korner I*; and (5) Plaintiff is entitled to recover monetary damages for its direct constitutional claim. Even though this appeal is resolved by a determination of the statute of limitations issue, we will briefly address the procedural due process claim.

## A. Statute of Limitations

The statute of limitations in North Carolina for both constitutional and negligence claims is three years. *See* N.C. Gen. Stat. § 1-52 (2017). The accrual of the statute of limitations period typically begins "when the plaintiff is injured or discovers he or she has been injured." *Christie v. Hartley Constr., Inc.*, 367 N.C. 534, 538, 766 S.E.2d 283, 286 (2014). However, "[w]hen the General Assembly provides an effective administrative remedy by statute, that remedy is exclusive and the party must pursue and exhaust it before resorting to the courts." *Jackson for Jackson v. North Carolina Dept. of Human Resources Div. of Mental Health, Developmental*

*Disabilities, & Substance Abuse Servs.*, 131 N.C. App. 179, 186, 505 S.E.2d 899, 903-04 (1998). Nevertheless, the exhaustion of administrative remedies doctrine is inapplicable when the remedies sought are not considered in the administrative proceeding. *Philips v. Pitt County Mem. Hosp., Inc.*, 222 N.C. App. 511, 522, 731 S.E.2d 462, 470 (2012). Under those circumstances, "the administrative remedy will not bar a claimant from pursuing an adequate remedy in civil court." *Johnson v. First Union Corp.*, 128 N.C. App. 450, 456, 496 S.E.2d 1, 5 (1998).

Plaintiff argues the statute of limitations was tolled while Plaintiff exhausted its administrative remedies through the appeal of Defendant's final agency decision in *Nanny's Korner I*. Plaintiff contends the exhaustion of administrative remedies doctrine required Plaintiff to exhaust its remedy through the claim under the NCAPA before Plaintiff's right to bring a constitutional claim arose. Accordingly, Plaintiff argues that its cause of action for the alleged due process violation did not accrue until 9 June 2014, when this Court issued its mandate in *Nanny's Korner I*.

Conversely, Defendant contends the statute of limitations began to run on or about 15 June 2010, around the time Defendant issued its written warning to Plaintiff. Defendant argues it is reasonable to conclude the alleged damages occurred near the time of the issuance of the written warning requiring Plaintiff to warn its customers and keep Mr. Cromartie off the premises. Defendant also argues the statute of limitations was not tolled by the pursuit of administrative remedies under

the exhaustion of administrative remedies doctrine since Plaintiff sought monetary damages, a remedy not available under the NCAPA. Defendant further suggests that even Plaintiff viewed the remedy under the statute as inadequate, "since it prevailed in its case against the agency, *i.e. Nanny's Korner I*, but now seeks a monetary remedy under both the North Carolina Tort Claims Act and the Law of the Land Clause." Accordingly, Defendant argues the statute of limitations was not tolled, and has long since run.

We hold the statute of limitations began to run on or about 15 June 2010, when Defendant issued the written warning to Plaintiff. Defendant's written warning was the "breach" that proximately caused—in Plaintiff's own words—a "real, immediate, and inescapable" injury. The statute of limitations began to run when Plaintiff was injured or discovered the injury, which in this case happened almost simultaneously. The statute of limitations was not tolled while Plaintiff pursued its administrative remedies in *Nanny's Korner I* because in that action, Plaintiff sought a remedy not available through the NCAPA—namely, monetary damages. In its complaint, Plaintiff acknowledges that the NCAPA "does not provide a remedy for . . . lost income and profits." Therefore, the statute of limitations was not tolled while Plaintiff pursued its administrative remedies, and the filing of the instant claim on 22 May 2017 fell outside the statute of limitations. We affirm the trial court.

B. Constitutional Procedural Due Process Claim

Plaintiff contends it sufficiently plead a direct claim against the State of North Carolina for a violation of its due process rights guaranteed under the state constitution. "'[I]n the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution.'" *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 338, 678 S.E.2d 351, 354 (2009) (quoting *Corum v. University of North Carolina*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992)). "[P]laintiffs have the burden of showing, by allegations in the complaint, that the particular remedy is inadequate." *Shell Island Homeowners Ass'n Inc. v. Tomlinson*, 134 N.C. App. 217, 223, 517 S.E.2d 406, 411 (1999). "An adequate remedy must provide the possibility of relief under the circumstances." *Craig* at 340, 678 S.E.2d at 355. "An adequate state remedy exists if, assuming the plaintiff's claim is successful, the remedy would compensate the plaintiff for the same injury alleged in the direct constitutional claim." *Estate of Fennell v. Stephenson*, 137 N.C. App. 430, 437, 528 S.E.2d 911, 915-16 (2000) (*rev'd on other grounds by* 354 N.C. 327, 554 S.E.2d 629 (2001)). Further, a plaintiff must still win other pretrial motions, including filing a timely claim. *Craig* at 340, 678 S.E.2d at 355.

Plaintiff argues it has the right to bring a direct constitutional claim since no adequate state remedy exists. In its complaint, Plaintiff states that the NCAPA "does not provide a remedy for the plaintiff to recover for the harm caused by the

deprivation of plaintiff's due process rights, namely, harm to reputation, loss of goodwill, lost income and profits." Plaintiff also argues the dismissal of its claim at the Industrial Commission proves it does not have an adequate state remedy. "Certainly, a cause of action under the Tort Claims Act that expires before the right to bring the constitutional law claim even arose, cannot be an adequate remedy at law."

Defendant argues Plaintiff does not have a direct constitutional claim because it had an adequate state remedy in the form of the Industrial Commission through the Torts Claim Act. We agree. The Tort Claims Act explicitly grants authority to the North Carolina Industrial Commission to hear tort claims against State agencies. *See* N.C. Gen. Stat. § 143.291(a) (2017). Plaintiff pursued that remedy when it filed an affidavit at the Industrial Commission on 23 January 2017, alleging negligence on the part of Defendant and seeking $600,000 in damages. Nonetheless, the Full Commission dismissed Plaintiff's claim on 21 December 2018, citing the Tort Claims Act's three-year statute of limitations.[4] Plaintiff's failure to comply with the applicable statute of limitations does not render its remedy inadequate. An adequate state remedy existed because, assuming Plaintiff's claim under the Tort Claims Act had been successful, the remedy would have compensated Plaintiff for the same injury alleged in the constitutional claim.

---

[4] *See* N.C. Gen. Stat. § 1-52 (2017).

Accordingly, because the Tort Claims Act provided an adequate state remedy for Plaintiff's claim, Plaintiff does not have a direct constitutional claim against the State under the North Carolina Constitution.

## IV.    Conclusion

Because Plaintiff had an adequate state remedy for its procedural due process claim but did not pursue it within the three-year statute of limitations, we affirm the trial court.

AFFIRMED.

Chief Judge McGee and Judge Hampson concur.