IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-689

No. COA21-194

Filed 21 December 2021

I.C. No. TA-27267

CEDARBROOK RESIDENTIAL CENTER, INC. AND FRED LEONARD, Plaintiffs,

v.

N.C. DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF HEALTH SERVICE REGULATION, ADULT CARE LICENSURE SECTION, Defendant.

Appeal by defendant from order entered 6 November 2020 by the North Carolina Industrial Commission ("Commission"). Heard in the Court of Appeals 3 November 2021.

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Joseph A. Ponzi and Howard L. Williams, for plaintiffs-appellees.*

*Robinson, Bradshaw & Hinson, P.A., by Adam K. Doerr and Demi Lorant Bostian; and North Carolina Department of Justice, by Senior Deputy Attorney General Amar Majmundar, for defendant-appellant.*

ARROWOOD, Judge.

¶ 1　　The North Carolina Department of Health and Human Services ("defendant") appeals from the Commission's denial of defendant's motion to dismiss. Defendant contends that the claims of Cedarbrook Residential Center Inc. and Fred Leonard

- 1 -

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Opinion of the Court*

("plaintiffs") are barred by the public duty doctrine, alternatively arguing that plaintiffs failed to plead a valid claim for negligence. For the following reasons, we affirm the Commission.

## I. Background

Plaintiffs filed an Affidavit and Verified Claim for Damages with the Commission on 25 October 2018. Plaintiffs asserted in the Affidavit that defendant had harmed plaintiffs by negligently:

> (1) conducting surveys in November 2015, March 2016, and July 2016; (2) issuing statements of deficiencies that contain [defendant's] allegations against Cedarbrook from the surveys; (3) issuing a Suspension of Admissions against Cedarbrook on November 19, 2015 and leaving it in place for nearly eight months; and (4) issuing a "directed" plan of protection against Cedarbrook on March 18, 2016.

On 8 January 2019, defendant filed a response and motion to dismiss pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6), and a motion to stay discovery pending a ruling on the motion to dismiss. Deputy Commissioner James C. Gillen denied defendant's motions on 13 March 2019. Defendant appealed to the Full Commission on 27 March 2019, and Chair Philip A. Baddour, III, approved defendant's request for an interlocutory appeal on 17 May 2019.

On 10 September 2019, the Commission conducted a hearing on defendant's appeal. On 6 November 2020, the Commission filed an order affirming the denial of defendant's motions to dismiss. Defendant filed notice of appeal on 4 December 2020.

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Opinion of the Court*

## II.    Discussion

Defendant presents the following arguments:   the Commission erred in denying defendant's motion to dismiss because the Tort Claims Act does not apply; the public duty doctrine bars plaintiffs' claims; plaintiffs failed to plead a valid claim for negligence; and allowing plaintiffs' claim "would endanger North Carolina citizens."  We address each argument in turn.

### A.    Appellate Jurisdiction and Standard of Review

The denial of a motion to dismiss is an interlocutory order which is not immediately appealable unless that denial affects a substantial right of the appellant. *RPR & Assocs., Inc. v. State,* 139 N.C. App. 525, 527, 534 S.E.2d 247, 249-50 (2000), *aff'd per curiam,* 353 N.C. 362, 543 S.E.2d 480 (2001); *see also* N.C. Gen. Stat. § 7A-27(b) (2019).  "[T]he denial of a motion to dismiss based upon the defense of sovereign immunity affects a substantial right and is thus immediately appealable." *RPR & Assocs., Inc.,* 139 N.C. App. at 527, 534 S.E.2d at 250 (citations omitted).

In this case, defendant's motion to dismiss is based in part upon the defense of sovereign immunity.  Because the trial court's denial of defendant's motion to dismiss affects a substantial right, we hold that defendant's appeal is properly before this Court.

We review the denial of a motion to dismiss on the basis of sovereign immunity *de novo.  White v. Trew*, 366 N.C. 360, 363, 736 S.E.2d 166, 168 (2013).

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Opinion of the Court*

> The standard of review for an appeal from the Full Commission's decision under the Tort Claims Act "shall be for errors of law only under the same terms and conditions as govern appeals in ordinary civil actions, and the findings of fact of the Commission shall be conclusive if there is any competent evidence to support them."

*Simmons v. Columbus County Bd. of Educ.,* 171 N.C. App. 725, 727, 615 S.E.2d 69, 72 (2005) (quoting N.C. Gen. Stat. § 143-293 (2003)). "Thus, 'when considering an appeal from the Commission, our Court is limited to two questions: (1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision.' " *Id.* at 728, 615 S.E.2d at 72 (quoting *Simmons v. N.C. Dep't of Transp.,* 128 N.C. App. 402, 405-406, 496 S.E.2d 790, 793 (1998)).

Additionally, when reviewing a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, this Court treats plaintiffs' "factual allegations contained in [their] affidavit before the Industrial Commission as true." *Hunt v. N.C. Dep't of Lab.*, 348 N.C. 192, 194, 499 S.E.2d 747, 748 (1998) (citation omitted).

### B.   Tort Claims Act and Sovereign Immunity

Defendant first argues that the State Tort Claims Act ("STCA") does not apply because plaintiffs cannot sue defendant like a "private person." We disagree.

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Opinion of the Court*

¶ 10        An action cannot be maintained against the State of North Carolina or a state agency unless the State consents to be sued or upon its waiver of immunity; this immunity is absolute and unqualified. *Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 534, 299 S.E.2d 618, 625 (1983) (citations omitted).

¶ 11        The STCA provides a limited waiver of sovereign immunity for the

> negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina.

*Ray v. N.C. Dep't of Transp.*, 366 N.C. 1, 4, 727 S.E.2d 675, 678 (2012) (quoting N.C. Gen. Stat. § 143-291 (2011)). "No formal pleadings are required to invoke the jurisdiction of the Industrial Commission under the State Tort Claims Act." *Zimmer v. N.C. Dep't of Transp.*, 87 N.C. App. 132, 135, 360 S.E.2d 115, 117 (1987) (citing *Branch Banking & Trust Co. v. Wilson County Bd. of Educ.,* 251 N.C. 603, 111 S.E.2d 844 (1960)). The only requirement is that the claimant file with the Commission an affidavit in duplicate, containing the following information:

> (1) The name of the claimant;
>
> (2) The name of the department, institution or agency of the State against which the claim is asserted, and the name of the State employee upon whose alleged negligence the claim is based;
>
> (3) The amount of damages sought to be recovered;

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Opinion of the Court*

(4) The time and place where the injury occurred;

(5) A brief statement of the facts and circumstances surrounding the injury and giving rise to the claim.

N.C. Gen. Stat. § 143-297 (2019). Plaintiffs have filed an affidavit in compliance with these requirements.

Defendant argues that the STCA does not apply in this case because "[p]rivate persons cannot be held liable for regulatory actions[,]" and accordingly "state agencies cannot be held liable for the same." This argument misconstrues the meaning of "private person" under the STCA. Although defendant contends the STCA only applies to situations where a private person may also be liable, this Court has held that the STCA "will be construed so as to effectuate its purpose of waiving sovereign immunity so that a person injured by the negligence of a State employee may sue the State as he would any other person." *Zimmer*, 87 N.C. App. at 136, 360 S.E.2d at 117-18 (citation omitted). Accordingly, the "private person" language within the STCA pertains to the nature of the proceedings but does not operate to bar waiver of sovereign immunity. Defendant's argument fails to acknowledge that many cases presented to the Commission and to this Court on appeal involve regulatory action.

Defendant also contends the STCA does not apply because "[t]he statutes regulating adult care homes expressly provide for challenges of penalties and suspensions under the Administrative Procedure Act." Defendant argues that

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Opinion of the Court*

allowing this claim amounts to an impermissible "end-run around" the process the General Assembly established for challenges to regulatory action. Defendant cites N.C. Gen. Stat. §§ 131D-2.7(d)(4) and 131D-34(e) to support its argument.

¶ 14 Although the General Assembly has provided several remedies under the Administrative Procedures Act, the availability of an administrative remedy does not preclude plaintiff from seeking a remedy under the STCA. This Court recently held that an entity regulated by defendant had an adequate state remedy under the STCA. *Nanny's Korner Day Care Ctr., Inc. v. N.C. Dep't of Health & Hum. Servs.*, 264 N.C. App. 71, 80, 825 S.E.2d 34, 41, *appeal dismissed, review denied sub nom.*, *Nanny's Korner Day Care Ctr., Inc. v. N.C. Dep't of Health & Hum. Servs., Div. of Child Dev. & Early Educ.*, 831 S.E.2d 89 (N.C. 2019).

¶ 15 In *Nanny's Korner*, DHHS took regulatory action against a daycare center and required the center to notify its customers of an allegation of sexual abuse, resulting in loss of business and the daycare center's closure. *Id.* at 73-75, 825 S.E.2d at 37-38. The daycare center brought a claim against DHHS under the STCA, which was dismissed because the statute of limitations had run. *Id.* at 79, 825 S.E.2d at 40. While addressing a constitutional procedural due process claim, this Court held that the plaintiff did not have the right to bring a direct constitutional claim because plaintiff "had an adequate state remedy in the form of the Industrial Commission through the Torts Claim Act." *Id.* at 80, 825 S.E.2d at 41.

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Opinion of the Court*

¶ 16 "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (citation omitted). The issue in this case—whether a regulated entity has a state remedy under the STCA—has already been decided by this Court in *Nanny's Korner*, and that decision has not been overturned by a higher court. Accordingly, we are bound by this precedent and hold that plaintiffs were not barred from bringing a claim under the STCA.

### C.    Public Duty Doctrine

¶ 17 Defendant further contends that plaintiffs' claims are barred by the public duty doctrine. We disagree.

¶ 18 The public duty doctrine is a common law negligence doctrine existing apart from the doctrine of sovereign immunity. *Myers v. McGrady*, 360 N.C. 460, 465, 628 S.E.2d 761, 766 (2006). The STCA did not specifically address the public duty doctrine when it was originally enacted. Our Supreme Court first recognized the public duty doctrine in *Braswell v. Braswell*, 330 N.C. 363, 370, 410 S.E.2d 897, 901 (1991) ("The general common law rule, known as the public duty doctrine, is that a municipality and its agents act for the benefit of the public, and therefore, there is no liability for the failure to furnish police protection to specific individuals."). Later cases expanded the applicability of the public duty doctrine to governmental functions

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Opinion of the Court*

other than law enforcement. *See Stone v. N.C. Dep't of Labor*, 347 N.C. 473, 495 S.E.2d 711 (1998) (alleged negligent failure to inspect chicken processing facility); *Hunt*, 348 N.C. 192, 499 S.E.2d 747 (alleged negligent inspection of go-kart seatbelt at amusement park); *Myers*, 360 N.C. 460, 628 S.E.2d 761 (alleged negligent management of forest fires). Two exceptions were recognized:

> (i) where there is a special relationship between the injured party and the governmental entity ("special relationship") and (ii) when the governmental entity creates a special duty by promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered ("special duty").

*Hunt,* 348 N.C. at 197, 499 S.E.2d at 750 (citing *Braswell,* 330 N.C. at 371, 410 S.E.2d at 902).

In 2008, the General Assembly added N.C. Gen. Stat. § 143-299.1A to the STCA, which provides in pertinent part:

> (a) Except as provided in subsection (b) of this section, the public duty doctrine is an affirmative defense on the part of the State department, institution, or agency against which a claim is asserted if and only if the injury of the claimant is the result of any of the following:
>
> (1) The alleged negligent failure to protect the claimant from the action of others or from an act of God by a law enforcement officer as defined in subsection (d) of this section.
>
> (2) The alleged negligent failure of an officer, employee, involuntary servant or agent of the State to perform

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Opinion of the Court*

a health or safety inspection required by statute.

(b) Notwithstanding subsection (a) of this section, the affirmative defense of the public duty doctrine may not be asserted in any of the following instances:

(1) Where there is a special relationship between the claimant and the officer, employee, involuntary servant or agent of the State.

(2) When the State, through its officers, employees, involuntary servants or agents, has created a special duty owed to the claimant and the claimant's reliance on that duty is causally related to the injury suffered by the claimant.

(3) Where the alleged failure to perform a health or safety inspection required by statute was the result of gross negligence.

N.C. Gen. Stat. § 143-299.1A (2019).

Our Supreme Court addressed this amendment in *Ray v. N.C. Dep't of Transp.*, 366 N.C. 1, 727 S.E.2d 675 (2012). The *Ray* Court noted that the statute "incorporated much of our public duty doctrine case law." *Id.* at 7, 727 S.E.2d at 680 ("Subdivision 143-299.1A(a)(1) includes the *Braswell* holding for law enforcement officers. Subdivision 143-299.1A(a)(2) aligns with *Stone's* holding that there is no liability for negligent failure to inspect under the public duty doctrine. Finally, subdivisions 143-299.1A(b)(1) and (b)(2) codify the exceptions to the public duty doctrine we have recognized since our first acknowledgment of the doctrine." (citations omitted)). The Court also acknowledged the General Assembly "made clear

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Opinion of the Court*

that the doctrine is to be a more limited one than the common law might have led us to understand." *Id.* Accordingly, the Court determined that:

> By the plain language of the statute, the public duty doctrine is a defense only if the injury alleged is the result of (1) a law enforcement officer's negligent failure to protect the plaintiff from actions of others or an act of God, or (2) a State officer's, employee's, involuntary servant's, or agent's negligent failure to perform a health or safety inspection required by statute. . . . *In all other cases the public duty doctrine is unavailable to the State as a defense.*

*Id.* at 8, 727 S.E.2d at 680-81 (emphasis added).

¶ 21  Upon concluding that the statute limits the use of the public duty doctrine as an affirmative defense, the Court determined that the statute was a clarifying amendment, reasoning that the General Assembly reacted to "a topic that it had not previously addressed and stating that, while our Court had largely properly applied the doctrine, the doctrine is to be a limited one[,]" which "indicate[d] that the General Assembly intended to clarify the role of the public duty doctrine in the STCA with N.C. [Gen. Stat.] § 143-299.1A." *Id.* at 12, 727 S.E.2d at 683.

¶ 22  Defendant argues that the public duty doctrine applies to allegedly negligent inspections, citing our Supreme Court's holding in *Hunt* which applied the public duty doctrine to negligent inspection of seat belts. Defendant also emphasizes the portion of *Ray* holding that the amendment is clarifying to support the argument that *Hunt* is still controlling. Although defendant is correct that the amendment was held to be

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Opinion of the Court*

a clarifying one and *Ray* did not explicitly overrule prior precedent, defendant fails to acknowledge the plain language of the statute and *Ray*'s application of the statute.

The statute provides that the public duty doctrine is available as an affirmative defense "if and only if the injury of the claimant is the result of . . . [t]he alleged negligent failure of an officer, employee, involuntary servant or agent of the State *to perform* a health or safety inspection required by statute." N.C. Gen. Stat. § 143-299.1A(a)(2) (emphasis added). In *Ray*, the Court held that the plaintiffs' claims for "negligent 'design and execution' of the narrowing of [a roadway] from three lanes to two," and "negligent failure to repair" were not barred by the public duty doctrine because "[n]either claim is for negligent failure to inspect pursuant to a statute[.]" *Ray*, 366 N.C. at 12, 727 S.E.2d at 683. In the case *sub judice*, plaintiffs' claim is based on allegedly negligent licensure actions taken after a series of inspections. Plaintiffs' claim is not for the alleged negligent failure *to perform* a health or safety inspection. Accordingly, by applying the plain language of the statute and our Supreme Court's holding in *Ray*, we hold that plaintiffs' claim is not barred by the public duty doctrine.

### D.     Negligence Claim

Defendant contends that plaintiffs' allegations are not sufficient to state a cause of action because "[t]here is no legal basis for the claim that DHHS owes a duty to the owners or operators of the adult care homes it inspects and licenses."

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Opinion of the Court*

Defendant also asserts that the "intentional, discretionary acts taken pursuant to regulatory authority do not give rise to a tort claim."

Defendant's argument is intertwined with its interpretation of the public duty doctrine. Although an inquiry into a statutory duty to the public was central to our Supreme Court's precedent prior to the 2008 amendment, our Supreme Court's application of the amendment in *Ray* is clear that the General Assembly intended to limit the public duty doctrine and that our Courts should apply the plain language of the statute. As we have held that the public duty doctrine does not bar plaintiffs' claim, defendant's argument that plaintiffs have failed to state a cause of action is overruled.

Additionally, defendant's argument that it should not be held liable for acting intentionally pursuant to authority granted by the General Assembly "overlooks the fact that the focus is not on whether [defendant's] actions were intentional, by rather on whether [they] intended to injure or damage the [plaintiffs]." *See Crump v. N.C. Dep't of Env't & Nat. Res.*, 216 N.C. App. 39, 44-45, 715 S.E.2d 875, 880 (2011).

> The term "willful negligence" has been defined as the intentional failure to carry out some duty imposed by law or contract which is necessary to the safety of the person or property to which it is owed. A breach of duty may be willful while the resulting injury is still negligent. Only when the injury is intentional does the concept of negligence cease to play a part.

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Opinion of the Court*

*Pleasant v. Johnson,* 312 N.C. 710, 714, 325 S.E.2d 244, 248 (1985) (internal citations omitted). In order for defendant's argument to succeed, a showing that defendant's employees intended to cause harm to plaintiffs would be required. Nothing in the record in this case, nor the parties' briefs, suggest that defendant intended to cause plaintiffs' injuries. Accordingly, defendant's argument that it should not be held liable for intentional acts is overruled.

The dissent expresses concern that under this holding, defendant and other state regulatory agencies will be held "in an impossible standard" liable for both enforcing and failing to enforce statutory mandates. The dissent cites in comparison our recent opinion in *Tang v. N.C. Dep't of Health and Hum. Servs.*, 2021-NCCOA-611 (unpublished).

In *Tang*, we affirmed the Commission's finding that defendant had breached its duty by failing to take appropriate regulatory action. *Id.* ¶ 1. The adult care facility at issue in *Tang* housed a number of residents known to be disoriented or with other mental health conditions, and the facility did not have any functioning door alarms to alert staff if residents left the facility unattended. *Id.* ¶ 4. Although defendant was aware that the facility was not equipped with adequate exit alarms, defendant failed to assess appropriate violations or require appropriate corrective measures. *Id.* ¶¶ 5-6. Before the facility took any corrective action, an adult care resident eloped and was later found dead in a nearby area. *Id.* ¶¶ 8-11.

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Opinion of the Court*

¶ 29 The dissent argues that defendant is now squeezed into an impossible predicament between *Tang* and this opinion and will be held liable regardless of what actions are taken. The dissent's concerns are misplaced for several reasons. First, *Tang* is factually distinguishable from this case. In *Tang*, it was established that the conditions actually posed a serious risk of harm to adult care facility residents, that defendant knew or should have known of the conditions, and that defendant failed to take appropriate regulatory action (i.e., assessing a Type A violation). *Id.* ¶ 13. In this case, taking the factual allegations in plaintiff's affidavit as true (as we are required to do at this stage of the litigation), the conditions did not actually pose a serious risk of harm, but defendant took the most extreme regulatory action available (i.e., multiple Type A violations and a suspension of admissions). Although the dissent characterizes this as an impossible predicament where defendant will always be liable, these cases simply present examples where defendant failed to exercise reasonable care in fulfilling its statutory duties.

### E. Public Policy

¶ 30 Defendant finally argues that allowing tort claims for regulatory actions would endanger North Carolina citizens and "unleash a flood of litigation." In so arguing, defendant warns that allowing a regulated entity to bring a tort claim "could dissuade regulators from performing their statutorily mandated duty to protect residents."

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Opinion of the Court*

¶ 31 "North Carolina courts have recognized the jurisdiction of the Industrial Commission to determine whether discretionary acts performed by employees or agents of the State were negligent and whether they proximately caused injury to a claimant." *Zimmer*, 87 N.C. App. at 136, 360 S.E.2d at 118 (citations omitted). Our Courts have repeatedly affirmed the Commission's authority to make determinations of negligence where a party alleges harm caused by an agency's regulatory actions. We are not persuaded by defendant's concern that affirming the Commission here will encourage regulators to abandon their statutorily mandated duties. Our holding does not add or subtract any duties to which defendant or its employees were already bound to.

¶ 32 More importantly, our General Assembly "is without question the policy-making agency of our government, and when it elects to legislate in respect to the subject matter of any common law rule, the statute supplants the common law rule and becomes the public policy of the State in respect to that particular matter." *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 169, 594 S.E.2d 1, 8 (2004) (citation and quotation marks omitted). Here, our General Assembly chose to legislate with respect to the public duty doctrine, and the statute has become "the public policy of the State" with respect to the availability of the public duty doctrine as an affirmative defense. Defendant's public policy concerns would be more appropriately directed to the

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Opinion of the Court*

General Assembly, particularly in this case where the General Assembly limited the applicability of the public duty doctrine through legislative action.

III.　Conclusion

¶ 33　　For the foregoing reasons, we affirm the Commission's order denying defendant's motion to dismiss.

AFFIRMED.

Judge DIETZ concurs by separate opinion.

Judge TYSON dissents by separate opinion.

No. COA21-194 – *Cedarbrook Residential Ctr., Inc. v. N.C. Dep't of Health & Hum. Servs.*

DIETZ, Judge, concurring.

State regulators are not angels. They are people, like all the rest of us. And, like everyone else, they owe a duty when they act to exercise ordinary care to protect others from foreseeable harm. *Fussell v. N. Carolina Farm Bureau Mut. Ins. Co.*, 364 N.C. 222, 226, 695 S.E.2d 437, 440 (2010). But the State has a power the rest of us do not; the State can cloak itself in sovereign immunity to avoid being sued when its own employees breach this universal duty of care that the law imposes on us all.

Several years ago, this Court held that, when State regulators act negligently in the performance of their regulatory duties, the State had opted to treat itself like everyone else. *Nanny's Korner Day Care Ctr., Inc. v. N. Carolina Dep't of Health & Hum. Servs.*, 264 N.C. App. 71, 80, 825 S.E.2d 34, 41 (2019). The State did so, this Court reasoned, through the State Tort Claims Act, which permitted the plaintiff in *Nanny's Korner* to sue a State agency (the same agency sued in this case) for the negligence of its regulators. *Id.* To be sure, the Industrial Commission dismissed that negligence claim as barred by the applicable statute of limitations, but this Court held that the claim, had it been timely filed, could have been pursued under the State Tort Claims Act. *Id.*

That decision is still good law and we are bound by it. My dissenting colleague strains to avoid *Nanny's Korner*'s holding by asserting that this Court's "dismissal

- 18 -

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*DIETZ, J., concurring*

was the ratio decidendi and the end of our appellate mandate," leaving the rest of the Court's analysis as unbinding "obiter dicta." This is nonsense. It is this Court's *holding* that binds us, not merely the mandate or disposition, and we held in *Nanny's Korner* that the plaintiff's constitutional claim was barred because the plaintiff "had an adequate state remedy in the form of the Industrial Commission through the Torts Claim Act." *Id.*

¶ 37         The dissent also points to a number of policy reasons for rejecting *Nanny's Korner*—a potential "stampede" of lawsuits against the State; the availability of relief through the APA; the State's allegations (all of which remain unproven) that Cedarbrook operated a substandard residential care home.

¶ 38         These policy considerations might be reasons for our Supreme Court to exercise its discretion to take this case and examine the holding in *Nanny's Korner*—something our State's high court chose not to do when *Nanny's Korner* was first decided. But they are not reasons for a Court of Appeals judge to dissent. *See State v. Miller*, 275 N.C. App. 843, 851, 852 S.E.2d 704, 711 (2020). I will faithfully adhere to our responsibility to follow controlling precedent and leave it to our Supreme Court to determine if that precedent should change.

No. COA 21-194 – *Cedarbrook Residential Ctr., Inc. v. N.C. Dep't of Health & Hum. Servs.*

TYSON, Judge, *dissenting*.

Plaintiffs failed to show any legal duty owed or breach thereof, or proximate cause in their putative negligence action. Claims challenging an agency's regulatory actions are properly heard under the North Carolina Administrative Procedures Act ("NCAPA"). The plurality opinion's conclusion will lead to a stampede of nonjusticiable suits against regulatory state agencies which are clearly barred by sovereign immunity except for the limited waiver of that immunity under the State Tort Claims Act ("STCA").

The Industrial Commission cannot waive North Carolina's sovereign immunity under the STCA. The Commission has no statutory mandate or jurisdiction to sit in judgment of the reasonableness of other state agencies enforcing that agency's regulatory mandates when the agency's duty is such that no "private person" can perform under the STCA.

That regulatory review function is clearly assigned under the NCAPA to the Office of Administrative Hearings ("OAH"). The plurality's opinion erroneously affirms the Commissioner's order denying defendant's motion to dismiss. I vote to reverse, remand for dismissal, and respectfully dissent.

## I. Background

Defendant documented the gross violations and issues it found at Cedarbrook's

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Tyson, J., dissenting*

senior living facility in its "Statements of Deficiencies," a comprehensive investigative report which exceeded 400 pages. The regulatory findings included documented deficiencies in: (1) supervision issues, where a Cedarbrook resident was found near I-40, five miles away from Cedarbrook's facility; (2) reports of residents involved in prostitution and sexual acts in exchange for sodas from the commissary, which plaintiff claims were all consensual activities; and, (3) cockroach infestations, among many other things.

In November 2015, defendant issued proposed penalties and suspended Cedarbrook from admitting new residents. Plaintiff challenged these regulatory actions in proceedings before the OAH in 2016. Plaintiff and defendant reached an agreement to settle the matter prior to hearing before an administrative law judge. As a result of the settlement, defendant agreed to dismiss the citations. Plaintiff does not challenge the factual basis for allegations in the Statement of Deficiencies, but offers alternative reasons, explanations, and excuses for these documented events and deficiencies at its facility.

## II.    Issue

Defendant argues the Commission erred in refusing to dismiss plaintiff's claims as barred by the State's sovereign immunity; and by effectively recognizing a cognizable claim for purported "negligent regulation" to permit an entity or individual, which is regulated by the State, to sue the state regulator, agency, and

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Tyson, J., dissenting*

ultimately the taxpayers of North Carolina under general tort law under the STCA before the Industrial Commission.

### III.    Standard of Review

"[W]e review the trial court's denial of defendant's motion to dismiss *de novo*." *White v. Trew*, 366 N.C. 360, 363, 736 S.E.2d 166, 168 (2013) (emphasis supplied).

### IV.    Analysis

### A.  Sovereign Immunity

The General Assembly instituted public policy and statutorily charged defendant with licensing and inspecting adult care homes and facilities.  It also mandated defendant to enforce statutes and regulations to achieve these goals and uphold the rights of captive and vulnerable residents. *See* N.C. Gen. Stat § 131D-2.4 (2019) (Defendant "shall inspect and license all adult care homes.").  The statute requires defendant to impose penalties on adult care homes and facilities when and if their inspections reveal violations of state law, regulations, or violations of the residents' rights. N.C. Gen. Stat. § 131D-4.4(d) (2019).

Our Supreme Court held, "[i]t has long been established that an action cannot be maintained against [a state agency] unless it consents to be sued or upon its waiver of immunity, and that *this immunity is absolute and unqualified.*" *Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 534, 299 S.E.2d 618, 625 (1983) (citations omitted). Defendant maintains "*absolute and unqualified*" sovereign immunity from suit in

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Tyson, J., dissenting*

enforcing this statute as a state agency. *Id.* This immunity is absolute under common law, is the status quo unless waived, bars statutory claims, and compels dismissal. *See id*.

¶ 48 Plaintiff can only overcome "*absolute and unqualified*" sovereign immunity by showing the State waived its immunity and consented to be sued. *Id.* Again, our Supreme Court confirmed the General Assembly's public policy in *Guthrie*, "[t]he State is immune from suit unless and until it has expressly consented to be sued." *Id.* (citation omitted). If a plaintiff cannot demonstrate waiver of immunity and consent, its claim fails and it must be dismissed. *Vest v. Easley*, 145 N.C. App. 70, 74, 549 S.E.2d 568, 573 (2001).

## B. Tort Claims Act

¶ 49 The STCA is an expressly limited statutory waiver of the State's sovereign immunity by the General Assembly. It permits only claims arising "as a result of the negligence of any . . . employee . . . of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, *if a private person*, would be liable to the claimant in accordance with the laws of North Carolina." N.C. Gen. Stat. § 143-291(a) (2019) (emphasis supplied).

¶ 50 Pursuant to the STCA, "negligence is determined by the same rules as those applicable to private parties." *Bolkhir v. N.C. State Univ.*, 321 N.C. 706, 709, 365

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Tyson, J., dissenting*

S.E.2d 898, 900 (1988) (citation omitted). "To establish actionable negligence, plaintiff must show that: (1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury." *Id.*

¶ 51 The party asserting a claim must establish cause. Proximate cause is "a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred," and that it could be reasonably foreseen and probable under the circumstances. *Id.* at 710, 365 S.E.2d at 901 (citation omitted).

¶ 52 The Commission concluded plaintiff's allegations "compl[y] with the requirements of the Tort Claims Act" because plaintiff filed a complaint and listed employees whose conduct was allegedly negligent. This holding expressly contradicts the plain language of the statute, upends the General Assembly's comprehensive and long-established administrative statute and procedures to challenge regulatory action, which provides an adequate state remedy.

¶ 53 The Commission's denial of defendant's motion to dismiss creates unprecedented and untenable liability for the citizens and taxpayers of this State. Further, STCA only permits parties to sue the State "where the State of North Carolina, *if a private person*, would be liable[.]" N.C. Gen. Stat. § 143-291(a). (emphasis supplied). This inclusion of "if a private person" clause is a substantive

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Tyson, J., dissenting*

statutory limiting requirement. *See Frazier v. Murray*, 135 N.C. App. 43, 48, 519 S.E.2d 525, 529 (1999) ("Tort liability for negligence attaches to the state and its agencies under the Tort Claims Act only where the State [], if a private person, would be liable to the claimant." (citation omitted)).

¶ 54 Plaintiff's allegations are wholly based on regulatory actions and sanctions defendant cited plaintiff for violating and which it has not denied. No "private person" has any right or authority to perform these exclusively state regulatory actions or to inspect or sanction a licensee for violations of laws and regulations. N.C. Gen. Stat. § 131D-2.4.

¶ 55 According to the Order, plaintiff asserts "[defendant] breached its 'duty of reasonable care in the exercise of its authority to investigate the facility and take licensure actions' and . . . negligently issued statements of deficiencies."

¶ 56 The STCA waives sovereign immunity only when an asserted:

> negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina.

*Ray v. N.C. Dep't of Transp.*, 366 N.C. 1, 4, 727 S.E.2d 675, 678 (2012) (quoting N.C. Gen. Stat. § 143-291 (2011)).

¶ 57 Plaintiff has failed to establish a duty that any reasonable "private person"

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Tyson, J., dissenting*

owed to them. Further, plaintiff has failed to allege that any state actor acted as an unreasonable person in breach of that putative duty during the course of their mandatory regulatory investigation and sanctions.

## C. DHHS' Duties

This Court recently affirmed the Commission's conclusion that defendant DHHS breached a duty owed and proximately caused an elderly resident's disappearance and ultimately her death. *Tang v. N.C. Dep't of Health and Hum. Servs*, __ N.C. App. __, 2021-NCCOA-611 ¶ 3, 2021 WL 5071898 (unpublished). In *Tang*, DHHS, as here, was responsible for performing regulatory investigations for an adult care living facility ("Unique Living"). Upon an investigation, and after a regulatory inspection of Unique Living, DHHS issued several violations. *Id*. at *1, ¶ 4. One of the many citations pertained to a faulty door alarm system, which was specifically installed to notify staff if a patient left the facility without an attendant. *Id*. at *2, ¶ 5. The DHHS employee told Unique Living management that no licensure action would be taken at that time because no serious non-compliance consequences had arisen. *Id*. at *2, ¶ 6.

Ms. Tang, an elderly resident of Unique Living, required increased monitoring. She walked out of Unique Living unattended, just days after these alarm door violations were reported. *Id*. at *2, ¶ 8. Within a week, Unique Living's license was suspended, and the facility was closed. *Id*. at *2, ¶ 9. Ms. Tang was officially declared

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Tyson, J., dissenting*

deceased years later in 2014. *Id*. at *2, ¶ 11.

> The Commission found that [DHHS] had a duty to Ms.
> Tang pursuant to N.C. Gen. Stat. § 131D-2 *et. seq*., which
> was "to license and periodically inspect adult care homes
> like Unique Living and to take reasonable steps to ensure
> that the conditions at those facilities did not place
> residents at substantial risk of serious death or harm."
> Based on the evidence, the Commission found that
> "[DHHS] had the ability and the regulatory authority to
> take action against Unique Living to prevent harm to its
> residents but failed to do so."
>
> . . . .
>
> The Commission concluded that defendant breached its
> duty "*by failing to take appropriate regulatory action* to
> ensure immediate correction of the conditions that existed
> at Unique Living in July 2008[,]" specifically the "wholly
> inadequate supervision of residents[.]" The Commission
> concluded that this breach was a proximate cause of Ms.
> Tang's disappearance and death, *because if [DHHS] had
> taken appropriate regulatory action* to ensure the
> conditions at Unique Living were corrected immediately,
> Ms. Tang "would not have been able to leave the facility
> unnoticed."

*Id*. at *3, ¶ 16-17 (emphasis supplied).

¶ 60        In *Tang*, the Commission held DHHS liable and ordered them to pay Ms. Tang's estate $500,000.00 in damages. *Id*. at *2-3, ¶¶ 13, 15-16. This Court affirmed the Commission's finding and conclusion, holding DHHS had breached their duty "by failing to take appropriate regulatory action to ensure immediate correction of the conditions." *Id*. at *3, ¶ 28.

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Tyson, J., dissenting*

¶ 61 Here, among other infractions and as with the Type A violations in *Tang*, DHHS alleged that an elderly resident from Cedarbrook had wandered from the facility without notice to or accompanied by the staff. Fortunately, the elderly resident was found alive five miles away from plaintiff's facility near the Interstate highway.

¶ 62 Plaintiff must show duty, breach thereof, causation and damage. *Parker v. Town of Erwin*, 243 N.C. App. 84, 110, 776 S.E.2d 710, 729-30 (2015). Plaintiff has not shown a duty not to "negligently regulate" was owed, nor have they shown that duty was breached, and asserted no supported allegation the purported breach was the proximate cause of their harm. DHHS, and quantitatively North Carolina taxpayers, became encumbered by a hefty fine in *Tang* because the agency's duty and breach to the deceased resident were purportedly shown. DHHS was held responsible for their failure to act within the authority given them to enforce the regulatory investigations and violations found therein to protect an elderly resident from wandering alone.

¶ 63 Here, DHHS did the opposite to meet its statutory mandates. DHHS cited the violations and acted promptly to ensure the vulnerable residents were protected and the violations were quickly addressed. As was asserted by counsel for DHHS at oral arguments, if DHHS is liable in *Tang* when they do not enforce regulatory sanctions and then, under the plurality's analysis, are also liable when they do enforce for the

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Tyson, J., dissenting*

same conduct, how can DHHS comply with their statutory mandate to conduct regulatory investigations to protect vulnerable residents at all?

¶ 64    If DHHS enforces the statutory mandates "too" properly, but later settles the issues prior to hearing before the OAH then the agency will be subject to suit by a myriad of plaintiffs.

¶ 65    Plaintiff allowed these deficiencies in their facilities and procedures to exist, brought an administrative challenge to the Statement of Deficiencies, which was settled prior to hearing before the ALJ. Plaintiff failed to allege the elements of negligence to state a claim that is cognizable under the STCA.

¶ 66    Under the logic of *Tang* and the plurality's opinion, and as DHHS argued during oral arguments, they and all state regulatory agencies would be held in an impossible standard (1) liable for enforcing the statutory mandates; and, (2) also liable for failing to enforce those very same mandates with the Industrial Commission sitting in judgment of their "reasonableness." The limited waiver of sovereign immunity under the STCA simply does not recognize or permit plaintiff's claim, which is properly dismissed.

## V.    Adequate State Remedy

¶ 67    The plurality and concurring opinions cite *Nanny's Korner Day Care Ctr., Inc. v. N. C. Dep't of Health and Human Servs.*, 264 N.C. App. 71, 825 S.E.2d 34 (2019), and assert it is controlling precedent and binds us to uphold the Industrial

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Tyson, J., dissenting*

Commission's failure to dismiss in our present case.

¶ 68        In *Nanny's Korner*, the plaintiff suffered loss of clients and eventually closed after DHHS filed reports alleging sexual abuse of children in the day care center and required the plaintiff to notify other parents. *Id*. at 75, 825 S.E.2d at 38. This Court dismissed plaintiff's expired claim and held, "Plaintiff does not have a direct constitutional claim against the State under the North Carolina Constitution." *Id*. at 80, 825 S.E.2d at 41.

¶ 69        This Court affirmed the Industrial Commission's dismissal of the plaintiff's claim. *Id*. Affirming that dismissal was the *ratio decidendi* and ended our appellate review and mandate. Any further notion, asserted by the plurality's opinion purporting to create a regulatory negligence claim against a State agency to be haled before the Industrial Commission under the STCA, is extraneous and obiter dicta. Neither the plurality nor the concurring opinion addresses the primacy of sovereign immunity as the general rule and the limited and express statutory waiver and exception under the STCA to allow tort claims only when and "if a private person would be liable to the claimant." *Ray*, 366 N.C. at 4, 727 S.E.2d at 678 (citation omitted).

¶ 70        Under the NCAPA, for an aggrieved party, an administrative law judge may:

> Order the assessment of reasonable attorneys' fees and witnesses' fees against the State agency involved in contested cases decided under this Article where the

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Tyson, J., dissenting*

> administrative law judge finds that the State agency named as respondent has substantially prejudiced the petitioner's rights and has acted arbitrarily or capriciously or under Chapter 126 where the administrative law judge finds discrimination, harassment, or orders reinstatement or back pay.

N.C. Gen. Stat. § 150B-33(b)(11) (2019).

¶ 71        Presuming DHHS or its employee-agent did not act professionally or reasonably during the scope of their investigation or in preparing its 400-page "Statement of Deficiencies," the NCAPA provides an adequate and exclusive state remedy for allegedly improper or unjustified regulatory action by a state agency or employees.

¶ 72        Under the NCAPA's waiver of immunity and the enacted administrative procedure and remedies statute, an aggrieved party may challenge state regulatory action, and seek a remedy. If plaintiff had continued to pursue its claims before the OAH and won, it could have pursued reversal of the administrative action, remedial actions, and an award of attorneys' fees in the contested case by showing defendant "substantially prejudiced" its rights and acted "arbitrarily or capriciously." N.C. Gen. Stat. § 150B-33.

¶ 73        "[T]he law encourages settlements" of disputes. *Kirkpatrick & Assocs. v. Wickes Corp.*, 53 N.C. App. 306, 311, 280 S.E.2d 632, 636 (1981). Plaintiff voluntarily did so here and chose not to pursue its NCAPA administrative remedies to completion. That

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Tyson, J., dissenting*

settlement does not give rise to any cognizable claim for regulatory negligence before the Industrial Commission.

¶ 74    Similarly, in an appeal following the NCAPA contested case, plaintiff could have sought attorneys' fees for the appeal and the administrative proceedings if it persuaded an appellate court that defendant acted "without substantial justification in pressing its claims." N.C. Gen. Stat. § 6-19.1 (2019).  Plaintiff here did neither and settled its claims prior to hearing and waived and exhausted its administrative remedies. *Id.*

¶ 75    The General Assembly enacted public policy and created a comprehensive statutory procedure to allow and govern aggrieved party challenges to regulatory action through a contested case, including in the specific context of sanctions and penalties assessed, and suspensions of admissions to non-compliant adult care homes.  The General Assembly provided clear, but limited, internal and external remedies for parties who claim injury by unjustified regulatory agency action. Negligence claims before the Industrial Commission challenging regulatory actions and sanctions are not cognizable within the STCA's limited waiver of sovereign immunity, and such putative claims are not within the jurisdiction of the Industrial Commission.  If aggrieved, plaintiff possessed adequate State remedies available under the NCAPA and the OAH and failed to exhaust them. N.C. Gen. Stat. § 150B-33.  Plaintiff's claims are properly dismissed.

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2021-NCCOA-689

*Tyson, J., dissenting*

## VI.     Conclusion

Defendant's regulatory activities and sanctions are exclusively state actions under North Carolina's sovereign immunity.  Plaintiff has failed to show any enforceable duty owed or breach thereof on part of DHHS, "if a private person would be liable to the claimant."  Plaintiff's complaint is properly dismissed as not cognizable under the limited sovereign immunity waiver of the STCA.  Plaintiff failed to pursue and exhaust available and adequate administrative procedures and remedies properly asserted under the NCAPA and the OAH.

Plaintiff's own negligence contributed to its predicament by allowing squalor and deplorable conditions to exist, and like the Type A violations in *Tang*, allowed an elderly patient to walk out and be found alive five miles away at an interstate highway, failed to provide adequate oversight of its vulnerable populations in residential adult care facilities, and utterly failed to abide by state-mandated statutes and regulations.  If there are any true victims or duty owed or breach thereof here, it is plaintiff's duty to their elderly, dependent, suffering, and neglected residents, and not the taxpayers of North Carolina to the plaintiff.  This appeal is properly reversed and remanded to the Commission to dismiss.  I respectfully dissent.